UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK   :
Ex Rel: Barry S. Turner, Esq.
On behalf of Kathleen Connors                    :

                     Petitioner,                    :

        -against-                                         :

DISTRICT ATTORNEY OF NEW YORK       :
COUNTY,
                               :
SUPERINTENDENT, BEDFORD
CORRECTIONAL FACILITY,                          :

                   Respondents.[1]            :
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/15

12cv3355 (LTS) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J:**

Petitioner Kathleen Connors ("Petitioner") seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254, following her December 13, 2007 conviction, upon a plea of guilty, in New

York State Supreme Court, New York County, of one count of manslaughter in the first degree,

in violation of New York Penal Law Section 125.20. (*See* Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254, dated April 16, 2012 ("Petition" or "Pet."), (Dkt. 1); Transcript of

Plea Proceedings, dated December 13, 2007 ("Plea Tr.") (Dkt. 9).) The court sentenced

Petitioner to a determinate term of 23 years, in accordance with a plea agreement between

---

[1] As the District Attorney of New York County is not a proper respondent in this action,
*see* Rule 2(a) of the Rules Governing Section 2254 Cases (stating that an application for writ of
habeas corpus on behalf of a person in state custody "must name as respondent the state officer
who has custody"); 28 U.S.C. § 2242 (an application for a writ of habeas corpus "shall allege . . .
the name of the person who has custody over him"), any habeas claims asserted by Petitioner
against the District Attorney should be dismissed, and this Court's use of "Respondent" herein
should be read to refer solely to the Superintendent of the Bedford Hills Correctional Facility,
where Petitioner is incarcerated.

Petitioner and the District Attorney's Office. (*See* Transcript of Sentencing Proceedings, dated Jan. 10, 2008 (Dkt. 9) ("Sentencing Tr."), at 11.) Petitioner filed her Petition on April 27, 2012 while incarcerated at Bedford Hills Correctional Facility, in Bedford, New York (Pet., at 2), where she is still serving her sentence.

Petitioner raises three claims in the Petition: (1) that the trial court erred in denying Petitioner's motion to dismiss or reduce the charges after an inspection of the grand jury minutes because the evidence before the grand jury was legally insufficient to support Petitioner's indictment (*id.*, at 6-8); (2) that the sentence of 23 years was excessive, cruel and unusual (*id.*, at 9-10); and (3) that she was denied her Sixth Amendment right to the effective assistance of counsel (*id.*, at 10-12).

For the reasons set forth below, I respectfully recommend that each of Petitioner's claims be dismissed.

## BACKGROUND

### A.    Factual Background

As Petitioner was convicted upon a guilty plea, there is no trial transcript from which this Court may summarize the underlying facts of this matter, and Petitioner's plea allocution does not set out those facts in any detail. Thus, for background purposes only, this Court has looked to one of the state court opinions in this case (specifically, the decision of the trial court, denying a collateral, post-conviction motion made by Petitioner to vacate her conviction)[2] for its description of the underlying evidence. According to the state court (the Hon. Ronald A. Zweibel, J.S.C.), that evidence revealed that, on the evening of November 19, 2005, Petitioner

---

[2] *See* Declaration of Alyson J. Gill, Esq., in Opposition to Petition for a Writ of Habeas Corpus, dated Dec. 5, 2012 ("Gill Decl.") (Dkt. 10-1), at Ex. F (Denial of Petitioner's Motion to Vacate Judgment, dated Aug. 11, 2011 ("Section 440 Decision")).

stabbed a man named Daniel Harrison ("Harrison"), who was Petitioner's "boyfriend of four

months," in his Upper East Side Apartment, resulting in Harrison's death.  (Section 440

Decision, at 1-2.)  The court summarized the evidence of Petitioner's involvement as follows:

> . . .  Harrison was unarmed when [Petitioner] stabbed him
> repeatedly in the upper chest with a large carving knife.  As
> Harrison lay bleeding to death, [Petitioner] cleaned herself up and
> prepared to leave the apartment, but was interrupted by the arrival
> of the police, who had been summoned by a neighbor.  [Petitioner]
> told the officer that, although she had an argument with her
> boyfriend earlier, everything was fine.
>
> Once inside the apartment, the officers found Harrison
> lying on the bed in a pool of blood, with blood covering the studio
> apartment's floor.  Harrison was still alive at that point, but
> ultimately died from the injuries inflicted by [Petitioner].  During a
> variety of statements, including a videotaped interview with an
> Assistance District Attorney, [Petitioner] confessed to the murder –
> claiming that she had stabbed Harrison after he had repeatedly hit
> and kicked her.  As part of her statement to Detective Angelique
> Lafreddo, inter alia, [Petitioner] told Detective Laffredo that she
> and the decedent were arguing and that he 'pummel[ed]' her 40 to
> 45 times when she tried to leave.  [Petitioner] also said she grabbed
> a knife from the kitchen.  After swinging it at him a few times,
> [Petitioner] threw the knife on the ground because it was dull and
> [the decedent] had smirked at her.  [Petitioner] went back into the
> kitchen and grabbed a sharper knife which she used to stab him in
> the right shoulder.  According to [Petitioner's] statement to
> Detective Lafreddo, the decedent left the room and went to sit on
> the bed in the bedroom.  [Petitioner] entered the bedroom and
> stabbed the decedent in the left shoulder.  When the decedent laid
> down on the bed without speaking she went into the bathroom to
> clean herself up and leave the apartment when the police arrived.
> According to Detective Laffredo, [Petitioner] said that she did not
> try and help the decedent or call 911.  [Petitioner] also said she
> tried to hit the decedent with a vase.
>
> . . . Detective Laffredo told the Grand Jury that [Petitioner],
> at the time of her arrest, did not appear to be someone who had
> been kicked or punched about the body 40 to 50 times.  [Petitioner]
> was treated at the precinct for a cut to her ankle that she did not
> know how she got cut but believed it happened sometime during
> the fight.

> Additionally, an autopsy revealed the decedent had three
> stab wounds to the right and left shoulder.  He also had
> approximately 40 abrasions over his body and one laceration on his
> forehead.  Many of the scratches were consistent with being
> scratched by a fingernail.  The Medical Examiner, Dr. Mary
> Fowkes, also noted that the decedent did not have any injury to his
> hands consistent with either punching or slapping and the lack of
> such injuries was inconsistent with having punched someone 40 or
> 50 times.

(*Id.*, at 2-3.)

In reply to Respondent's opposition to her habeas petition, Petitioner has submitted a

toxicology report to support her argument that both she and Harrison were intoxicated at the time

of the incident.  (*See* Dkt. 13, at 7-8.)  The trial court did not address that factual issue.

### B.    **Procedural History**

#### 1.    **Plea Proceedings**

On December 13, 2007, pursuant to a plea agreement, Petitioner pleaded guilty, before

Justice Zweibel, to manslaughter in the first degree, with an agreed sentence of 23 years

imprisonment.  (Plea Tr., at 1, 5-6.)  During the plea proceedings, Petitioner was represented by

counsel, Andrew Tso, Esq. ("Tso"), of the Legal Aid Society (*see id.*, at 1-2), and the

Government was represented by Assistant District Attorney Thomas Shields, Esq. (*see id.*).

Before accepting Petitioner's plea, Justice Zweibel asked Petitioner a series of questions

to ensure that her plea was knowing and voluntary.  The plea allocution was as follows:

> THE COURT:    Your wish at this time is to withdraw your
> heretofore-entered plea of not guilty and now
> offering to plead guilty to manslaughter in the first
> degree, in full satisfaction of this indictment?

> THE DEFENDANT:  Yes.

> THE COURT:    Are you offering to plead guilty of your own free
> will?

4

THE DEFENDANT:  Yes.

    THE COURT:  How old are you?

THE DEFENDANT:  39

    THE COURT:  Using drugs or medication of any kind at this time?

THE DEFENDANT:  No.

    THE COURT:  Have you discussed the case and your plea with your attorney?

THE DEFENDANT:  Yes.

    THE COURT:  Have you had sufficient time to thoroughly discuss your decision to plead guilty?

THE DEFENDANT:  Yes.

    THE COURT:  Are you pleading guilty because you are in fact guilty of this crime?

THE DEFENDANT:  Yes.

    THE COURT:  Do you understand by pleading guilty you're waving your constitutional rights, which include your right to trial by jury, right to confront witnesses against you, right to remain silent, and right to put the state to its burden of proving your guilt beyond a reasonable doubt?

THE DEFENDANT:  Yes.

    THE COURT:  You also understand if your plea of guilty is accepted by this court it will be exactly the same as if you have been found guilty after trial of manslaughter in the first degree, class B violent felony?

THE DEFENDANT:  Yes.

    THE COURT:  Do you understand the charge you're pleading guilty to, is that correct?

THE DEFENDANT:  Yep.

THE COURT: Has anyone, including the Court, Assistant District Attorney, your lawyer, or anyone else forced or threatened you to enter this plea of guilty?

THE DEFENDANT: No.

THE COURT: The Indictment charges you with murder in the second degree. You're being permitted to plead guilty to manslaughter in the first degree. The Indictment alleges that defendant, in the county of New York, on or about November 20, 2005, with intent to cause the death of another person, caused the death of Daniel Harrison. Do you admit to that?

THE DEFENDANT: Yes.

THE COURT: The agreement is to sentence you in accordance with a plea agreement that was entered into between your lawyer and the District Attorney's office, whereby you will receive a 23 year determinate sentence and five years post-release supervision. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have any other promises been made aside from that promise?

THE DEFENDANT: No.

Thereafter, Petitioner formally entered her guilty plea and Justice Zweibel set a sentencing date of January 10, 2008. (Plea Tr., at 5:21-6:7.) On that date, consistent with the plea agreement, Petitioner was sentenced to 23 years in prison, with five years of post-release supervision. (*See generally* Sentence Tr.)

## 2.     Direct Appeal

Petitioner appealed her conviction to the Appellate Division, arguing (1) that the evidence before the grand jury was insufficient to support her indictment, and (2) that her

sentence of 23 years was harsh, excessive, and constituted cruel and unusual punishment. (*See generally*, Gill Decl., Ex. A (Petitioner's Brief on Direct Appeal, dated Sept. 22, 2009).)

On June 15, 2010, the Appellate Division affirmed Petitioner's conviction. *People v. Connors*, 74 A.D.3d 563 (N.Y. Sup. Ct. App. Div. 2010). The court found that "[Petitioner's] guilty plea foreclose[d] appellate review of the sufficiency of the evidence presented to the grand jury." *Id*. at 564 (citing *People v. Kazmarick*, 52 N.Y.2d 322, 326 (1981)). The court also stated: "We perceive no basis for reducing the sentence. To the extent defendant is claiming her sentence was unconstitutional, that claim is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we also reject it on the merits." *Id*.

On June 16, 2010, the State served Petitioner with a Notice of Entry of the Appellate Division's decision (*see* Gill Decl., Ex. F (Notice of Entry)), but Petitioner did not seek leave to appeal from that decision to the New York Court of Appeals (*see* Section 440 Decision, at 5).

### 3.   Collateral Review

On January 5, 2011, Petitioner moved, with the assistance of counsel, to vacate her conviction and set aside her sentence pursuant to Sections 440.10 and 440.20 of the New York Criminal Procedure Law. (Gill Decl., Ex. D (Memorandum of Law in Support of Petitioner's Motion to Vacate the Judgment, dated Jan. 5, 2011).) In an attached affirmation, Petitioner's attorney raised four claims on Petitioner's behalf: (1) that the evidence presented to the grand jury was insufficient to support a charge of murder (Gill Decl., Ex. D (Affirmation of Barry S. Turner, Esq. in Support of Petitioner's Motion to Vacate the Judgment, dated Jan. 5, 2011) at ¶ 5); (2) that the prosecutor threatened to use psychiatric evidence from a prior evaluation of Petitioner, improperly influencing Petitioner to plead to the manslaughter (*id*., ¶ 6); (3) that Petitioner's sentence of 23 years constituted cruel and unusual punishment in violation of

Petitioner's Eighth Amendment rights (*id.*, ¶ 9); and (4) that the prosecutor failed to disclose *Brady* material[3] (*id.*, ¶¶ 10-13).

On August 11, 2011, the trial court denied Petitioner's motion.  (*See* Section 440 Decision).  As to Petitioner's first claim (that the grand jury minutes were insufficient to establish that she had the requisite intent to kill), the court denied the motion on the ground that, under Section 440.10(2)(a) of the New York Criminal Procedure Law, Petitioner was "barred from raising [on a Section 440 motion] an issue that was . . . raised on appeal." (*Id.* at 5-6.) Additionally, the court found that Petitioner's motion was flawed with respect to this claim because the motion papers did not contain sworn allegations substantiating all of the facts essential to the claim.  (*Id.* at 6 (noting that Petitioner's motion papers did "not allege any ground constituting a legal basis" for the claim, contained no "sworn allegations tending to substantiate essential facts," and based this claim solely on statements made by Plaintiff's counsel, "upon information and belief, unsupported by any other affidavit or evidence, including an affidavit from [Petitioner]").)  Finally, the court also denied this aspect of Petitioner's motion on its merits, finding that it was "clear that there was evidence of [Petitioner's] intent before the Grand Jury." (*Id.* at 6-7.)

As to Petitioner's second claim (that her sentence was cruel and unusual, in violation of the Eighth Amendment), the court again noted that, under C.P.L. 440.10(2)(a), it was required to deny a motion to vacate a judgment where the issue presented was previously determined on the merits on direct appeal.  (*Id.* at 7.)  The court added that, because the issue raised by Petitioner's

---

[3] *Brady v. Maryland,* 373 U.S. 83 (1963), provides that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

claim related solely to the validity of her sentence, it could not be raised in a Section 440 motion. (*Id.* (*citing People. v. Reed*, 61 A.D.3d 1216, 1217 (2009)).)

As to Petitioner's third claim (that, by allegedly threatening to use evidence from a prior, unrelated psychiatric evaluation, the prosecutors subjected Petitioner to "undue duress," which prompted her to accept the plea offer), the court found that, as with Petitioner's first claim, her motion papers lacked sworn affidavits or other evidence sufficient to support her allegations. (*Id.* at 8). The court further noted that Petitioner had not raised any claim of coercion during the plea allocution or sentencing proceeding (*id.* at 8-9); that she had admitted, during the plea allocution, that she intentionally caused the victim's death (*id.* at 9); that the government strenuously denied Petitioner's allegations of improper conduct (*see id.* at 8 (quoting the People's assertion that Petitioner's allegation of coercion was "a bald-faced lie")); and that Petitioner's claim that the prosecutor threatened to use unrelated psychiatric records at trial "strain[ed] credulity," as the prosecutor would have known that such evidence was inadmissible and as it would have been counterproductive for the prosecutor to introduce records that would have "disprove[d] the People's case regarding intent" (*id.* at 9). The court also stated that it had reviewed the Grand Jury minutes, found them "more than sufficient to uphold the second degree murder count," and "would not have sentenced [Petitioner] to anything less" than the sentence she received. (*Id.* at 10.)

Finally, as to Petitioner's last claim (regarding an alleged failure to disclose unspecified *Brady* material), the court found that the claim was unsupported and that there was "no reasonable possibility that such allegation [was] true." (*Id.* at 10.)

The court concluded that Petitioner's motion was "denied in its entirety both procedurally and on the merits." (*Id.* at 11.)

9

It appears that the State never served Petitioner with a Notice of Entry of the trial court's decision denying her Section 440 motion, as necessary to trigger her time to appeal. (*See* Letter to the Court from Alyson Gill, Esq., dated July 17, 2014 (Dkt. 14); *see also* Discussion *infra* at (II)(A).) Regardless of whether she received the required notice, Petitioner did not seek leave to appeal to the Appellate Division from the trial court's denial of her Section 440 motion.

### C.      **Federal Habeas Petition**

Petitioner, with the assistance of counsel, commenced this action for relief pursuant to 28 U.S.C. § 2254, by filing a Petition dated April 27, 2012. (*See* Pet.)  As noted above, Petitioner raises three claims in her Petition and supporting memorandum:  (1) that the evidence before the grand jury was legally insufficient to support the indictment; (2) that the sentence she received was excessive, cruel and unusual, and (3) that she received ineffective assistance of counsel in relation to her decision as to whether to accept a plea offer.

On December 5, 2012, Respondent filed an opposition memorandum (Memorandum of Law in Opposition to Petition For a Writ of Habeas Corpus, dated Dec. 5, 2012 ("Resp. Opp."), (Dkt. 7)), together with a declaration containing certain briefing and state court decisions (*see* Gill Decl.).  On April 1, 2013, Petitioner filed a reply memorandum.  (Response to the Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus, dated Mar. 29, 2013 ("Pet. Reply") (Dkt. 13).)

## DISCUSSION

### I.      **APPLICABLE LEGAL STANDARDS**

#### A.      **Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within a one-year limitations period, beginning on the latest of four dates,

typically "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[4] *See* 28 U.S.C. § 2244(d)(1)(A); *Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (explaining that, for purposes of § 2244, judgment becomes final upon "completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration] of the time to seek direct review via certiorari" (citations omitted)).  AEDPA specifies, though, the "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period.  28 U.S.C. § 2244(d)(2).

### B.   **Exhaustion**

A petitioner who is in custody pursuant to a state court judgment may seek a federal writ of habeas corpus on the ground that his or her custody is in violation of federal law, provided the petitioner has exhausted all available state court remedies, or is excused from doing so. *See* U.S.C. § 2254; *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his or her federal claims to the state courts, thereby affording those courts the " initial

---

[4] The limitations period may alternatively begin to run on the following dates: (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

opportunity to pass upon and correct alleged violations of [the] prisoners' federal rights."

*Picard*, 404 U.S. at 275 (internal quotation marks and citation omitted).

The state courts must be apprised of the factual and legal premises of the claim the petitioner asserts in federal court. *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 2007). There are several ways by which a petitioner can fairly present a federal claim to the state appellate court, including by demonstrating either

> (a) reliance on pertinent federal cases employing constitutional
> analysis, (b) reliance on state cases employing constitutional
> analysis in like fact situations, (c) an assertion of the claim in terms
> so particular as to call to mind a specific right protected by the
> Constitution, [or] (d) [an] allegation of a pattern of facts that is
> well within the mainstream of constitutional litigation.

*See Ramirez v. Attorney Gen.*, 280 F.3d 87, 94-95 (2d Cir. 2001) (citing *Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir. 1982)); *Davis v. Strack*, 270 F.3d 111, 122-23 (2d Cir. 2001).

Aside from setting out the federal nature of his or her claims, a petitioner must also, for purposes of the exhaustion requirement, present those claims to "the highest court of the pertinent state." *Larocco v. Senkowski*, 65 F. App'x 740, 742 (2d Cir. 2003); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted). To accomplish this in New York, on direct appeal, a petitioner must first appeal his or her conviction to the Appellate Division and then seek "further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal," which may be achieved with a letter submission, enclosing "briefs and other documents from the lower courts." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). A court will deem the exhaustion requirement satisfied where the "fair import" of the total application suggests a request for review of the constitutional claims raised in those submissions. *Id.* at 75-77. Where a federal claim is raised before the state trial court in a post-conviction motion under Section 440 of the New York Criminal Procedure Law, the petitioner must seek

leave to appeal the denial of the motion to the Appellate Division, in order to exhaust the claim for habeas review. *See Ture v. Racette*, No. 12cv01864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) (claim unexhausted where petitioner did not seek to appeal denial of § 440.10 motion).

AEDPA provides, however, that exhaustion may be excused where "there is an absence of available State corrective process," or where "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). Where, for instance, there has been substantial delay in the state criminal appeal process, through no fault of the petitioner and resulting in prejudice, it may be appropriate for a federal court to review the petitioner's habeas claims, even without full exhaustion. *See Roberites v. Colly,* 546 Fed. App'x 17, 19 (2d Cir. 2013) (citations omitted).

Further, even where a claim has not been exhausted in the state courts, a federal court may proceed to deny the claim, where it plainly lacks merit. *See* 28 U.S.C. § 2254(b)(2); *see also Contant v. Sabol*, 987 F. Supp. 2d 323, 348 (S.D.N.Y. 2013) ("a federal court may . . . exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are 'plainly meritless'" (citing *Rhines v. Weber,* 544 U.S. 269, 277 (2005))).

### C.    Standard of Review

If the federal court considers a habeas claim that has been adjudicated on the merits by the state court, then the federal court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA. *See* 28 U.S.C. § 2254(d); *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the

13

substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[5]  In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, on the other hand, this Court proceeds to consider a substantive claim that has not been decided by the state courts on the merits, this Court must consider the claim under a *de novo* standard of review. *See Carvajal v. Artus*, 633 F.3d 95, n.12 (2d Cir. 2011), *cert. denied* 132 S.Ct. 265; *see also Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007); *Smith v. Fischer*, 957 F. Supp. 2d 418, 434 (S.D.N.Y. 2013).

---

[5] Under AEDPA, a state court's decision is contrary to clearly established federal law where the state court either applies a rule that contradicts governing law set forth in Supreme Court holdings, or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006) (noting that this standard applies to the "holdings, as opposed to the dicta" of the Supreme Court's decisions). An unreasonable application of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to a "set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003).

## II.   **PETITIONER'S CLAIMS**

### A.   **Timeliness of Petition**

As a threshold matter, this Court finds that Petitioner filed her federal habeas Petition within the one-year statute of limitations provided by AEDPA.

On June 15, 2010, the Appellate Division decided Petitioner's direct appeal, *see Connors*, 74 A.D.3d 563, and, on June 16, 2010, the State served Petitioner with a Notice of Entry of the decision (*see* Gill Decl., Ex. F (Notice of Entry)).  As Petitioner did not seek leave to appeal to the Court of Appeals (*see* Section 440 Decision, at 5), her conviction became final 30 days later, on July 16, 2010.

On January 5, 2011, 173 days after her conviction became final, Petitioner moved to vacate the judgment pursuant to Sections 440.10 and 440.20 of the New York Criminal Procedure Law (Gill Decl., Ex. D), which served to toll the statute of limitations during the pendency of that motion, *see* 28 U.S.C. § 2244(d)(2) (AEDPA statute of limitations may be tolled during the pendency of "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim").  The motion was denied on August 11, 2011 (*see* Section 440 Decision), but, as noted above, it seems that the State never served Petitioner with a Notice of Entry of that decision (*see* Background *supra* at B(3); *see also* Dkt. 14).  This means that the 30-day period for Petitioner to seek leave to appeal to the Appellate Division from the denial of her Section 440 motion never commenced.  *See* N.Y. Crim. Proc. L. § 460.10(4)(a) (stating that,  "[w]ithin thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application, pursuant to [Section] 460.15, for a certificate granting leave to appeal to the intermediate appellate court");

*see also People v. Washington*, 86 N.Y.2d 853, 854 (N.Y. 1995); *Bennett v. Artuz*, 199 F.3d 116,

120 (2d Cir. 1999) (citing *Washington*), *aff'd,* 531 U.S. 4 (2000).

Therefore, the limitations period was still tolled at the time Petitioner filed her habeas

Petition, with 192 days left in the applicable one-year period.  Accordingly, the Petition was

timely filed.[6]

## B.    Petitioner's Claims

### 1.    Challenge to the Sufficiency of the Evidence Before the Grand Jury

Petitioner first claims that the indictment against her was defective because there was

purportedly "no evidence presented to the Grand Jury that [Petitioner] ever intended to kill

[Harrison]." (Pet., at 7.)  More specifically, Petitioner asserts that her statements to the police, as

well as the autopsy report, support her claim that "her intent was to injure [Harrison] so as to

prevent him from inflicting a continuous assault" against her.  (*Id.*)  Therefore, she contends, the

intent element of a murder-in-the-second-degree charge was could not have been established,

and the trial court erred in denying her motion seeking inspection of the grand jury minutes and a

dismissal or reduction of the one count charged in the indictment.  (*Id.*)

Although Petitioner raised a challenge to the indictment on her direct appeal (*see* Gill

Decl., Ex. A, at 5-9), she framed that challenge entirely based on state law (*see id.* (relying on

N.Y.C.P.L. § 190.65 and citing only state cases)), thus failing to apprise the Appellate Division

of any federal basis for the claim.[7]  Further, Petitioner did not seek leave to appeal the Appellate

---

[6] In their opposition to the Petition, Respondents originally asserted a statute-of-limitations argument (*see* Resp. Opp., at 14-16), but, upon later realizing that no Notice of Entry of the Section 440 decision had ever been served on Petitioner, Respondent withdrew that argument (*see* Dkt. 14), apparently conceding that the Petition was timely filed (*see id.*).

[7] Claims grounded solely in state law are not cognizable on federal habeas review, *see* 28 U.S.C. § 2254(a) (permitting federal habeas review only where the petitioner is allegedly in

Division's rejection of that claim, and thus, regardless of whether a federal basis for the claim

could be discerned from her appellate brief, she, in any event, failed to exhaust the claim fully.

While, as discussed below, this claim should nonetheless be "deemed" exhausted (given that

Petitioner has no avenue now available to her to exhaust the claim), deeming a claim exhausted

gives rise to a procedural bar to federal review, and Petitioner has not shown that she can

overcome that bar.  Moreover, even if this Court were to reach the merits of her claim, Petitioner

could not prevail, as her guilty plea forecloses any claim based on the sufficiency of the

indictment.

**a.     To the Extent Petitioner May Have a Federal Claim,
the Claim Is Unexhausted and Procedurally Barred,
and Petitioner Cannot Overcome that Bar to Review.**

Petitioner's challenge to her indictment is unexhausted because, at a minimum, she failed

to present the claim to "the highest court of the pertinent state." *See Senkowski*, 65 F. App'x at

742.  Following the denial of her direct appeal, *Connors*, 74 A.D.3d 563, Petitioner did not seek

leave to appeal to the New York Court of Appeals (*see* Section 440 Decision, at 5), as would

have been required to exhaust the claim.

At this point, though, Petitioner no longer has the ability to return to the state courts to

raise the claim at all necessary levels.  As the claim was based on the record of the grand jury

proceedings, it was capable of being raised on direct appeal, but Petitioner already used her one

---

custody in violation of "the Constitution or laws or treaties of the United States"); *Estelle v.
McGuire,* 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to
deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")
(citations omitted).  Thus, if Petitioner is still trying to assert a challenge to her indictment based
on Section 190.65, her claim would be subject to dismissal on that basis. *See, e.g., Fulton v.
Greene*, No. 05cv6314 (MAT), 2009 WL 3733046, at *3 (W.D.N.Y. Nov. 5, 2009) (finding that
a petitioner's claim under C.P.L. § 190.65 was a "purely state law matter" and was not
cognizable on federal habeas review).

17

opportunity for such an appeal, and abandoned any opportunity she had to place her record-based claims before the state Court of Appeals. *See, e.g., Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (remedies in New York State courts no longer available where "[petitioner] has already taken his one direct appeal"), *cert denied,* 549 U.S. 1133 (2007). Under New York law, Petitioner was also foreclosed from raising this claim collaterally in a Section 440.10 motion, *see* N.Y.C.P.L. § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal), as, indeed, the trial court held, when Petitioner attempted to raise the claim there after her unsuccessful direct appeal (*see* Section 440 Decision, at 5-6).[8]

   Where a petitioner can no longer pursue a claim in the state courts, this Court will "deem" the claim exhausted, *see Castille v. Peoples,* 489 U.S. 346, 351 (1989); *Grey v. Hoke,* 933 F.2d 117, 120-21 (2d Cir. 1991), but, in that circumstance, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim," *Gray v. Netherland,* 518 U.S. 152, 162 (1996); *see also Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 633 (2d Cir. 2001). Petitioner's claim, therefore, can only be reviewed by this

---

   [8] This Court notes that Petitioner cannot be said to have exhausted her claim via her Section 440 motion, as she also failed to seek leave to appeal from the denial of that motion. Although Petitioner might have an argument that the State's failure to serve her, in a timely fashion, with a Notice of Entry of the denial of that motion should excuse her from having to meet the exhaustion requirement, *see* 28 U.S.C. § 2254(b)(1)(B)(ii), she has not raised such an argument here, and it seems doubtful that this mere lack of service could constitute circumstances sufficient to "render . . . [the state] process ineffective" to protect her rights, *id*; *see also Nordahl v. Rivera,* No. 08cv5565 (KMK) (LMS), 2010 WL 9444862, at *2 (S.D.N.Y. Apr. 7, 2010) (noting that 28 U.S.C. § 2254(b)(1)(B)(ii) has been likened to "a 1981 Supreme Court ruling which 'cautioned that an exception to the exhaustion requirement is appropriate only where there is no opportunity to obtain redress in state court or where the state corrective procedure is so clearly deficient that any attempt to obtain relief is rendered futile" (quoting *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981))), *report and recommendation adopted by* 2013 WL 1187478 (Mar. 21, 2013).

Court if Petitioner demonstrates a basis for overcoming the procedural bar, either by showing (a) both "cause" for failing to raise the claim properly in state court and "prejudice" resulting from the alleged constitutional error, or (b) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

"[C]ause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  More specifically, a petitioner can show "cause" for a procedural default when (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) "some interference by state officials made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d at 829 (citation omitted).  "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his or her "actual and substantial disadvantage." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  Here, Petitioner has not even asserted any "cause" for her failure to seek leave to appeal this claim, and none is evident from the record.  As Petitioner has not shown cause for her procedural default, this Court need not reach the question of whether she can show prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice").

Petitioner has also failed to demonstrate that this Court's failure to review her claim regarding the sufficiency of the evidence before the grand jury would constitute a "fundamental

19

miscarriage of justice." To meet this narrow exception to the procedural bar, Petitioner would have to make a showing of "actual innocence." *Carrier*, 477 U.S. at 496; *see also Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (noting the need to demonstrate "actual as compared to legal innocence"). Further, "[t]o be credible," a claim of actual innocence would require Petitioner to come forward "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), that was not available at the time of her conviction. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316. Here, while Petitioner contends that she was "innocent of the original charge of Murder in the Second Degree" (Pet. Reply, at 3), it seems that her only purported evidence of "innocence" consists of certain of her own pre-plea statements, which, she contends, support her argument that she lacked the requisite intent to commit murder (Pet., at 7; Pet. Reply, at 3-4). These statements, which appear to have been provided to the Appellate Division at the time of Petitioner's appeal (*see* Gill Decl., at Ex. B), are not "new." Moreover, Petitioner pleaded guilty, and was thereby convicted, of manslaughter, and she has not even suggested that she is innocent of that crime. *See Taylor v. Rivera,* No. 07cv668 (PKC) (DF), 2011 WL 4471919, at *11 n.16 (noting that actual innocence "means 'entire' innocence, not just innocence of the particular charge on which the petitioner was convicted" (citations omitted)), *report and recommendation adopted by* 2011 WL 4472146 (Sept. 27, 2011), *aff'd,* 509 Fed. App'x 51 (2d Cir. 2013).

Accordingly, Petitioner cannot overcome the procedural bar to this Court's review of her claim regarding the sufficiency of the evidence before the grand jury, and the claim should be dismissed on this basis.

            **b.**      **In Any Event, Any Claim Challenging the Sufficiency of the Indictment Has Been Foreclosed by Petitioner's Guilty Plea.**

Even if Petitioner could overcome the procedural bar to this Court's review of her claim, the claim would necessarily fail, as Petitioner's guilty plea served to foreclose habeas relief with regard to any constitutional violations that occurred prior to the plea.  In *Tollett v. Henderson,* 411 U.S. 258 (1973), the Supreme Court considered whether a criminal defendant, post-plea, could obtain habeas relief by showing that the grand jury that had indicted him had been unconstitutionally selected.  The Supreme Court held that

> [w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea.

*Id.* at 267; *accord Harris v. Hulihan*, No. 11cv3019, (RA) (MHD), 2012 WL 5265624, at *18 (S.D.N.Y. Aug. 8, 2012) (citing *People v. Thomas,* 53 N.Y.2d 338, 344-45 (1981) for its holding that "to save . . . for appellate review an insufficient evidence claim following a plea of guilty would turn the 'solemn act' of pleading guilty into a mere device for maintaining innocence while avoiding trial"), *report and recommendation adopted by* 2012 WL 5266175 (Oct. 23, 2012); *McBride v. Larkin*, No. 12cv4703 (KBF), 2013 WL 1736586, at *5 (S.D.N.Y. Apr. 19, 2013) (citing *Tollett* and stating that "[t]he law is well settled that a guilty plea precludes habeas review of 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea'").

Petitioner's claim that the grand jury had insufficient evidence to indict her is a claim based on a deprivation of rights that allegedly occurred prior to the date on which she pleaded guilty. As such, the claim was forfeited by Petitioner's guilty plea and – even regardless of any lack of exhaustion or procedural default, as discussed above – the claim cannot be reviewed in the context of this habeas proceeding.

### 2.   Petitioner's Claim that Her Sentence Was Excessive

Petitioner claims that her 23-year sentence was "excessive," "cruel and unusual[,] and a denial of her rights to equal protection of the law." (Pet., at 5.) This claim has also been procedurally defaulted, and, even if the Court were to consider it, the claim would be subject to dismissal as non-cognizable on federal habeas review.

### a.   The Claim Is Unexhausted, Deemed Exhausted, and Procedurally Barred.

As with her first claim, Petitioner raised her excessive-sentence claim on her direct appeal, in explicit state-law terms. (*See* Gill Decl., Ex. A, at 10 (relying on N.Y.C.P.L. § 470.15(3) and citing state cases only).) This time, though, Petitioner arguably raised the claim in terms that were also sufficient to apprise the Appellate Division of the federal nature of the claim, as Petitioner referred to "cruel and unusual punishment" (*see id.*, at 1, 10), a phrase likely "to call to mind a specific right protected by the Constitution," *Smith v. Duncan*, 411 F.3d 340, 347-48 (2d Cir. 2005) (quoting *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*)); *accord Sosa v. Mohawk Corr. Fac.*, No. 07cv5916 (NRB), 2008 WL 534764, at *5 (S.D.N.Y. Feb. 25, 2008); *cf. Merejildo v. Breslin*, No. 05cv3111(AKH), 2009 WL 2151835, at *11 (S.D.N.Y. July 16, 2009) (noting that a habeas petitioner "did not refer to the U.S. Constitution when addressing [his] claim nor did he use phrases such as 'cruel and unusual

22

punishment' or 'grossly disproportionate,' as one might expect if the claim were alleging facts which could call to mind a constitutional issue").

Ultimately, though, Petitioner failed to exhaust this claim, by failing to seek leave to raise it before the Court of Appeals, on her direct appeal. (*See* Section 440 Decision, at 5.)  Once again, as Petitioner no longer has any available avenue to exhaust the claim before the state courts, the claim should be deemed exhausted,[9] and, as a result, it is procedurally barred. Further, in the absence of any showing by Petitioner of "cause" for the procedural default, or actual innocence, she cannot overcome the bar to this Court's review of the claim.

Accordingly, Petitioner's claim challenging the length of her sentence should be dismissed as procedurally barred from habeas review.

### b.    This Claim is Not Cognizable on Habeas Review.

In any event, Petitioner has not pleaded a cognizable Eighth Amendment claim.  In order to state such a claim, a petitioner must generally allege that the statute under which he or she was sentenced is itself unconstitutional. *See U.S. v. Dawson,* 400 F.2d 194, 200 (2d Cir. 1968) ("when a statute provides for punishment thought to be violative of the [Eighth] [A]mendment the constitutionality of the statute itself must be attacked") (citations omitted).  In this case, Petitioner has made no such attack on the validity of the relevant statute.

In the absence of a challenge to the statute itself, an excessive sentence claim may only be maintained if the sentence imposed failed to comply with state law. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the

---

[9] Petitioner also attempted to raise this claim on her Section 440 motion, but it was rejected by the trial court on the procedural grounds that (a) it was capable of being raised on direct appeal, and (b) that the claim related solely to the validity of Petitioner's sentence, making it inappropriate for consideration on a collateral motion. (*See* Section 440 Decision, at 7.)

sentence is within the range prescribed by state law." (citation omitted)).  Here, Petitioner was convicted of manslaughter in the first degree, pursuant to New York Penal Law Section 125.20, which, by the statute's terms, is a class B felony.  The permitted range for a sentence under this statute is five to 25 years imprisonment, *see* N.Y. Penal Law § 70.02(3)(a), and Petitioner's prison sentence of 23 years plainly fell within this range.

For this reason, no Eighth Amendment issue is implicated by Petitioner's sentence, and, even if Petitioner could overcome the procedural bar to this Court's review of the claim, the claim must be dismissed.

### 3.    Ineffective-Assistance-of-Counsel Claim

Finally, Petitioner claims that, in connection with her decision as to whether to plead guilty to first-degree manslaughter, her counsel failed to give her an adequate explanation of the crime with which she was charged (*i.e.*, second-degree murder), specifically with respect to the element of intent and the potential defense of justification.  (Pet., at 11.)  Petitioner also argues that counsel should have told her that, "if the jury, after trial[,] found that [Petitioner's] intent was to injure [Harrison], which resulted in his death, and convicted her of Manslaughter in the First Degree, the court would most likely sentence her to a substantially lower sentence than 23 years, since the maximum sentence would have been 25 years."  (*Id.*, at 11-12.)  Petitioner claims that counsel's recommendation that Petitioner plead guilty with a definite sentence of 23 years was, therefore, "substandard and unreliable legal advice."  (*Id.*, at 12.)

Petitioner has made no showing whatsoever that she exhausted her claim that she received ineffective assistance of counsel, in violation of the Sixth Amendment.  Based on the materials provided to this Court, it appears that Petitioner never raised this claim in *any* state court, either on direct appeal or in a collateral post-conviction motion.  Moreover, as this claim

24

would relate to matters outside the record, Petitioner could still raise the claim in a Section 440 motion, *see, e.g., People v. Rivera,* 71 N.Y.2d 705, 709 (1988) (explaining that an ineffective-assistance-of-counsel claim that cannot be decided on the trial record alone should be raised in a Section 440 proceeding), as to which there is no statute of limitations, *see* C.P.L. § 440.10 (stating that motion may be made "any time after the entry of a judgment"), *Griffin v. Suffolk Cnty.*, No. 13cv4375 (JFB), 2013 WL 6579839, at *3 (E.D.N.Y. Dec. 16, 2013) ("Section 440.10 has no statute of limitations"). Nonetheless, as, on *de novo* review, it is evident that this claim lacks any merit, I recommend that, even in the absence of exhaustion, the claim be dismissed on the merits under 28 U.S.C. § 2254(b)(2). *See e.g., Aparicio v. Artuz,* 269 F.3d 78, 91 n.5 (2d Cir. 2001).[10]

### a.    The *Strickland* Standard

A guilty plea must be both knowing and voluntary in order to be valid. *Parke v. Raley,* 506 U.S. 20, 28-29 (1992) (stating that "'[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant'" (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970))). In determining whether a particular guilty plea was made intelligently, a court must assess whether the defendant was in control of his or her "mental faculties" during the plea, "was advised by

---

[10] Under *Rhines v. Weber,* 544 U.S. 269, 277-78 (2005), this Court has discretion to stay habeas proceedings and hold a petition in abeyance, so as to allow a petitioner the opportunity to exhaust previously unexhausted claims. Where, however, the petitioner has not shown good cause for the failure to exhaust, or where the unexhausted claim is plainly meritless, then the issuance of a stay would constitute an abuse of discretion. *See id.* at 277. Where a court "determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 278. Alternatively, as noted above, AEDPA permits a court to dismiss an unexhausted claim, where the claim is without merit. (*See* Discussion *supra* at I(B); 28 U.S.C. § 2254(b)(2).)

competent counsel [and] . . . made aware of the nature of the charge against [him or her]," and was "fully aware of the direct consequences" of the plea. *Brady v. U.S.*, 397 U.S. 742, 755-56 (1970).

A criminal defendant who pleads guilty on the advice of counsel may attack the voluntary and knowing nature of the plea by demonstrating that such advice constituted ineffective assistance of counsel. While there is no constitutional right to a plea bargain, *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), there is a constitutional right to the effective assistance of counsel at the plea-bargaining stage, *see Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010); *Hill v. Lockhart*, 474 U.S. 52 (1985). The question of whether a habeas petitioner received constitutionally adequate assistance from counsel, at that stage, is generally determined under the standards enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *see also Hill*, 474 U.S. at 56-59 (holding that the two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel"). To prevail on an ineffective-assistance claim under *Strickland*, a petitioner must show that: (1) counsel's performance "fell below an objective standard of reasonableness" in light of prevailing professional norms; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Under the first prong of the *Strickland* test, an attorney has "a professional obligation to adequately inform [his or] her client about the considerations that are relevant to [his or] her client's decision to accept or deny a plea bargain," *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005), which means that "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against [the

defendant], as well as the alternative sentences to which [the defendant] will most likely be exposed," *Purdy v. U.S.*, 208 F.3d 41, 44 (2d Cir. 2000) (internal citation omitted).

To establish the "prejudice" necessary to satisfy the second prong of *Strickland*, a petitioner must also demonstrate that "the outcome of the plea process would have been different with competent advice." *Cooper*, 132 S. Ct. at 1384.  Where a petitioner claims that counsel was ineffective in counseling the *acceptance* of a plea, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *McNaught v. U.S.*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009) (quoting *U.S. v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002)).

A court may reject an ineffective-assistance-of-counsel claim for failure to satisfy either of these prongs of the *Strickland* standard, without reaching the other.  *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"); *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012) (noting that the court "need only consider the second prong" of *Strickland* to resolve the petitioner's ineffective-assistance-of-counsel claim).

### b.   Petitioner Has Not Demonstrated That Her Counsel's Performance Was Deficient.

As to the first prong of the *Strickland* test, the Court must accord substantial deference to counsel's strategic decisions and judgment.  *See Strickland.*, 466 U.S. at 688 (holding that there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").  In counseling a client as to whether to accept a plea offer, it is certainly true that defense counsel "must give the client the benefit of counsel's professional advice on this crucial decision," *Purdy*, 208 F.3d at 44 (internal quotation marks and citations omitted), but, upon later review, the Court must be cautious about examining that advice in

27

hindsight, given "the potential for the distortions and imbalance that can inhere in a hindsight perspective," *Premo v. Moore,* 131 S.Ct. 733, 741-42 (2011) (in the plea context, cautioning that courts must be wary of the "particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered").

Petitioner argues here that her counsel's performance was "outside the wide range of professional competence" because counsel failed to inform her that, in order to obtain a conviction on the crime of second-degree murder (as charged in the indictment), the prosecution would have to prove the element of "intent," *i.e.*, that Petitioner intended "to take the life of . . . Harrison." (Pet., at 11.)  On this point, Petitioner seems to suggest that the evidence would have shown that she intended to do no more than injure Harrison, and thus that the prosecution could not have prevailed in its case, had she gone to trial.  (*See id.*)  Further, Petitioner asserts that her counsel failed to discuss with her "the defense of justification" to the murder charge.  (*Id.*)  Finally, Petitioner contends that her counsel failed to explain that, if she had proceeded to trial, and if a jury had found her guilty of only manslaughter in the first degree (the lesser charge to which she pleaded), then she would "likely" have been sentenced to a prison term "substantially lower" than the 23 years she received upon her plea.  (*Id.*, at 11-12.)  Petitioner has offered no objective evidence to support any of her assertions about her attorney's conduct; she has not even provided the Court with a sworn affidavit or declaration made on penalty of perjury to attest to her factual allegations.  Further, on the record presented, none of Petitioner's assertions could be sufficient to demonstrate constitutionally defective representation.

First, Petitioner's own admission of intent, made during her plea allocution, undermines her argument that her counsel failed to give her adequate advice regarding the intent element of

28

the murder charge contained in the indictment.  Petitioner contends that, as evidenced by her

prior statements to the authorities, she acted with nothing more than an intent to injure Harrison,

and she asserts that her counsel should have explained to her that this would not have been

sufficient to establish second-degree murder.  (*See* Pet., at 4, 11.)  Yet, during the course of her

plea, Petitioner stated under oath that she had acted with the intent to kill.  (*See* Plea Tr., at 4:19-

5:4.)  "[S]elf-inculpatory statements made under oath at [a] plea allocution carry a strong

presumption of verity, and are generally treated as conclusive in the face of the defendant's later

attempt to contradict them."  *Adames v. U.S.*, 171 F.3d 728, 732 (2d Cir. 1999) (internal

quotation marks and citations omitted).  In light of Petitioner's sworn admission that she acted

with a level of intent that would have been sufficient to support the murder charge, she cannot

not now be heard to complain that her counsel failed to meet adequate performance standards by

supposedly failing to inform her that, absent such intent, the murder charge could not stand.

Second, Petitioner has not demonstrated that she actually had a viable justification

defense, and, therefore, she has not shown that any failure by her counsel to inform her of that

potential defense constituted inadequate performance.  *See, e.g., Black v. Herbert,* No. 02cv6252

(KMW) (DF), 2009 WL 1097971 (S.D.N.Y. Apr. 23, 2009) (adopting report and

recommendation, which found that, despite counsel's alleged failure to investigate or explain the

legal strength of a potential justification defense, petitioner had not shown ineffective assistance,

as he had not "demonstrate[d] that he actually did have a viable justification defense").  Under

New York law, "a person may not use deadly physical force upon another person" unless (1) that

person reasonably believes the other person "is using or about to use deadly physical force" and

(2) the actor is unable to "avoid the necessity of doing so by retreating" with complete personal

safety.  N.Y. Penal Law § 35.15(2)(a).  It is possible, although doubtful, that Petitioner could

have been excused from satisfying the "retreat" requirement of this defense, if she could have demonstrated that the events occurred in "her dwelling" and that she was "not the initial aggressor." *Id.*[11] Regardless of this, though, Petitioner's own statements apparently reflect that Harrison was unarmed when Petitioner first stabbed him (after discarding one knife and going back into the kitchen to find another that was sharper), and that, when Harrison then went into the bedroom to sit on the bed, Petitioner followed him into the bedroom and stabbed him again. (*See* Section 440 Decision, at 2-3.) These facts would not support a finding that Petitioner reasonably believed Harrison was using or was about to use deadly physical force against her. *See, e.g., People v. King*, 588 N.Y.S.2d 429, 430 (2d Dep't 1992) (finding that where a "complainant testified that, following a fist fight, the defendant ran after him and plunged a knife into his chest," it was "clearly established that the defendant could not have had a reasonable belief that deadly physical force was about to be used upon him"). Thus, it does not appear that the evidence would have supported a defense that Petitioner's use of deadly force against Harrison was justified. *See, e.g., People v. Wimberly*, 798 N.Y.S.2d 470 (2d Dep't 2005) ("Justification is not a defense to the use of deadly physical force unless the defendant

---

[11] Petitioner states that she had been living in the apartment where the stabbing took place (*see* Pet., at 2), although the facts as described by the trial court indicate that the apartment belonged to Harrison (*see* Section 440 Decision, at 1-2). Petitioner also contends that she was not the initial aggressor, but it appears that she at least initiated the second confrontation (in which she stabbed Harrison for the second time), given her own statements suggesting that Harrison withdrew from the first confrontation when he went into the bedroom. *See People v. Rattley*, 539 N.Y.S.2d 101, 102 (2d Dep't 1989) (finding that where defendant's brother had "brandish[ed] a knife" during a load a violent argument with defendant, but defendant had then returned to his room, retrieved a gun, and then returned to the scene of the fight and shot his brother, "the evidence clearly establishe[d] that in the second confrontation which ended in the death of the defendant's brother, the defendant was the initial aggressor"), *appeal denied* 74 N.Y.2d 745.

reasonably believed that the victim was about to use deadly physical force against [the defendant] . . . .").

Third, Petitioner has not demonstrated that her counsel's performance was deficient by failing to apprise her that, if she had foregone the plea and proceeded to trial, she would likely have received a lesser sentence, if convicted, than the sentence she chose to accept on her plea. While counsel should inform a defendant of the "alternative sentences to which he [or she] will most likely be exposed" *Purdy,* 208 F.3d at 45, Petitioner has not offered any support for her contention that a sentence of less than 23 years would actually have been likely, had she been tried on the murder charge. The charge set out in the indictment was for murder in the second degree, a Class A-1 felony, which was punishable by an indeterminate sentence with a minimum of between 15 and 25 years and a maximum of life imprisonment. *See* N.Y. Penal Law §§ 60.05(2); 70.00(2)(a), (3)(a)(i). While Petitioner argues that she could not have been convicted of that charge because "the only evidence in the matter was [Petitioner's] statements" (Pet. Reply, at 4), those statements alone, as described above (*see* Background *supra* at A; Section 440 Decision, at 2-3), could have *supported* a murder conviction. Further, it is clear from the trial court's summary that additional evidence did exist – including evidence regarding the extent of Harrison's injuries and Petitioner's own apparent lack of injury – that could have weakened Petitioner's assertion that she was not the initial aggressor, and thereby strengthened the prosecution's case. (*See id.*)

It would thus be entirely speculative to assume that, had Petitioner gone to trial on the murder charge, she would *not* have been convicted of that crime, but only of first-degree manslaughter (the very crime to which she pleaded), and that she then would have been given a sentence less harsh than the one she actually received. Certainly, according deference to

31

counsel's judgment at the time, *see Strickland*, 466 U.S. at 688, counsel could well have believed that Petitioner was likely to receive a *harsher* sentence, if she were convicted after trial, than she would receive by pleading guilty and accepting responsibility for her crime. In fact, if she had been convicted on the murder charge, Petitioner could have been sentenced to up to life imprisonment, and, even if only convicted of manslaughter, Petitioner could well have been sentenced to the maximum term of 25 years imprisonment, two years more than she actually received. Proceeding to trial would thus have carried significant downside risk, and Petitioner cannot fault her counsel for failing to advise her otherwise.

      c.      **Petitioner Has Also Not Shown the Requisite Prejudice.**

Even if the Court were to find that the performance of Petitioner's counsel fell below an objective standard of reasonableness, Petitioner's claim would still fail, as she has not demonstrated the "prejudice" required by the second prong of the *Strickland* test. In other words, she has not shown that there is a "reasonable probability" that, but for her counsel's alleged ineffective assistance, she would not have pleaded guilty. *U.S. v. Arteca,* 411 F.3d 315, 320 (2d Cir. 2005)*; see also Hill,* 474 U.S. at 59.

As a threshold matter, Petitioner does not actually assert that she would have rejected the plea offer, had counsel discussed with her the issues that she has now identified. Instead, Petitioner only argues that she was prejudiced because, by pleading guilty, she gave up the right to have an appellate court review the grand jury minutes. (*See* Pet., at 12.) Petitioner may be implying that, had she been made aware of certain information, she would have altered her decision to plead guilty, but a mere implication is insufficient to satisfy *Strickland. Cf. Muyet v. U.S.*, No. 03cv4247 (PKL), 2004 WL 2997866, at *2 (S.D.N.Y. Dec. 27, 2004) (finding that, where petitioner failed to assert explicitly that his decision to accept a plea offer would have

been different "had he been made fully aware of the consequences," an implication to that effect was "plainly insufficient"). Indeed, a petitioner's "failure to allege that correct advice from defense counsel would have altered the defendant's decision" has been held to bar habeas relief. *Aeid v. Bennett,* 296 F.3d 58, 64 (2d Cir. 2002); *accord Hill,* 474 U.S. at 60.[12]

Moreover, even if the Petition were read to assert a claim that Petitioner would have altered her decision, had she received the advice that, she contends, she should have been given, there is no objective evidence in the record to support such a claim. *See Bhindar v. U.S.,* No. 11cv3911 (LAP), 2013 WL 171084, at *5 (S.D.N.Y. Jan. 16, 2013) (stating that "it is well-settled that the second prong of *Strickland*, a formidable but-for test of prejudice, requires some further objective evidence beyond a petitioner's 'self-serving, post-conviction testimony'" (quoting *U.S. v. Gordon,* 156 F.3d 376, 380-81 (2d Cir. 1998))).

Finally, Petitioner cannot demonstrate the necessary "prejudice" where she has, even now, effectively admitted that she was, in fact, guilty of manslaughter in the second degree. (*See* Pet. Reply, at 4 (stating that manslaughter would have been the "appropriate" charge; *see id.* at 5 (suggesting that Petitioner's statements "clearly ma[de] out" the crime of manslaughter).) Given that this was the crime to which Petitioner pleaded guilty, Petitioner cannot reasonably assert that she was prejudiced by her counsel's performance. *See Rosenfeld v. U.S.,* 972 F. Supp. 137, 143-44 (E.D.N.Y. 1997) (rejecting petitioner's ineffective-assistance-of-counsel claim for lack of prejudice, where the court found that, even if petitioner's attorney had failed to explain the intent element of the charges to petitioner, "factual bases existed for [petitioner's] guilty pleas").

---

[12] Further, as discussed above, Petitioner's arguments regarding her purported lack of intent to kill, viable defense of justification, and likelihood of receiving a lesser sentence after trial are not as strong as Petitioner alleges. Thus, it is difficult to see why, even if fully informed, she would have chosen not to plead guilty, but rather to proceed to trial on the more serious charge in the indictment.

As Petitioner has not shown that she could satisfy either prong of the *Strickland* test, I recommend that the Court dismiss her unexhausted ineffective-assistance-of-counsel claim on its merits, under 28 U.S.C. § 2254(b)(2).

## CONCLUSION

For all of the foregoing reasons, I recommend:  (1) that this action be dismissed as against the respondent named as "District Attorney New York County," as this is not a proper respondent in a habeas corpus proceeding, and (2) that all claims asserted by Petitioner against respondent "Superintendent, Bedford [Hills] Correctional Facility" be dismissed in their entirety as procedurally barred, non-cognizable, and/or without merit.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), as Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  (*See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).)  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura T. Swain, United States Courthouse, 500 Pearl Street, Room 1320, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Swain.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW.  (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*,

9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992);

*Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234,

237-38 (2d Cir. 1983).)

Dated: New York, New York
January 5, 2015

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Laura T. Swain, U.S.D.J.

All counsel (via ECF)